STATE, Respondent, v. ANDERSON, Appellant

(2 N. W.2d 684.)

(File No. 8476. Opinion filed February 28, 1942.)

**A. J. Beck,** of Elk Point, for Appellant.

**Leo A. Temmey,** Atty. Gen., **E. D. Barron,** Asst. Atty. Gen., and **Clifford C. Oden,** State's Atty. of Union County, of Elk Point, for Respondent.

PER CURIAM. The defendant was found guilty by a jury of manslaughter in the second degree. The facts disclose that the town marshal of Alcester was called to the defendant's home located within the limits of the town upon an oral complaint that defendant was committing a misdemeanor. Upon arriving the marshal attempted to arrest the defendant. The marshal had no warrant for defendant's arrest. An altercation arose which terminated in physical combat, during which the· defendant struck the marshal a blow, which, for the purpose of this opinion, we may assume caused the marshal's death.

The jury was instructed in part, that if the defendant submitted to arrest by the town marshal without a warrant and thereafter changed his mind and resisted the arrest, then such resistance was unlawful. Under this instruction it was within the province of the jury to find the defendant guilty on the theory that the defendant first submitted to arrest and thereafter because of an unlawful resistance caused the marshal's death. A careful consideration of the entire record convinces us that the facts in the case do not warrant the instruction and that it was error to submit

the case to the jury upon this theory. The pertinent facts and the facts most favorable to the state are as follows:

The marshal and the defendant were observed coming out of defendant's home. The marshal said "Come on and go with me." The defendant then asked the marshal if he had any papers for his arrest and the marshal said that he did not need any because he was in the city limits. Following this discussion, the marshal attempted to take the defendant and this attempt resulted in a combat or fight during which the marshal finally gained the upper hand, sat astride the defendant and hit the defendant over the head with a blackjack. Thereafter the marshal lifted the defendant to his feet and started away with him. As they were leaving the defendant called back to his wife for his hat and handkerchief. After proceeding about "half a block" the defendant, in the words of the witness Leander, "broke loose and he hit him so hard that both went down." In explanation of this statement, the witness testified that the defendant broke loose and struck the marshal, that both men went down on the ground and that thereafter another serious fight or physical combat took place. We quote the testimony of the witness with reference to the time after the marshal lifted the defendant to his feet following the first fight, and by way of explanation, state that reference in the testimony to "Alf" is to the marshal and reference to "Kris" is to the defendant.

"Q. And then, Mr. Leander, you said that Alf had hold of Kris' arm, did he? A. It looked like he had him by the left arm; kind of had hold of his arm.

"Q. And then they walked along in sort of a northeasterly direction from the Kris Anderson home? A. Yes, sir.

"Q. Up toward town? A. Yes.

"Q. And then did I understand you to say that they stopped? A. Well, I don't know as they really stopped. Kris swung and got loose.

"Q. And did you say he hit Alf? A. At the same time, he hit Alf.

"Q. And then they wrestled after that, or did you say they both went down? A. When he hit him, it seemed like it was hard enough so they both practically went down.

"Q. Alf hit Kris about the same time, didn't he, or did you see that? A. No; he didn't hit Kris.

"Q. And then they both got up after Kris struck? A. Alf got up.

"Q. And what about Kris? A. He was getting up, but Alf came back quick enough so he went back down.

"Q. In other words, Alf was the first one up, and then Kris got up and then they wrestled? A. Yes, sir.

"Q. And then what happened? A. They wrestled, and Kris got on top.

"Q. And was he hitting Alf? A. It looked that way to me.

"Q. Well, you could tell, couldn't you? A. Not exactly.

"Q. So you don't know if he was hitting him or not? A. Not at that time. Before, I did.

"Q. And then they finally separated, did they? A. Yes.

"Q. And Kris went back home? A. Yes, sir.

"Q. And Alf walked up toward town? A. Yes."

■ We find nothing in this evidence which justifies a finding by the jury that the defendant ever submitted to arrest and we are convinced that it was error to submit such issue to the jury. It is argued that the jury was justified in concluding that the defendant submitted to arrest because he called to his wife for his hat and handkerchief as he was starting away with the marshal, but this request when viewed in the light of the conditions under which the defendant was leaving, will not, in our opinion, support any such conclusion. At the time this request was made of the wife, the defendant had just been lifted to his feet by the marshal after taking a severe beating. The marshal had hold of defendant's arm and was escorting the defendant away from the scene. The defendant's leaving, under these circumstances, cannot, in our opinion, be held to be anything other than a leaving under compulsion, and the fact that he asked for his hat and handkerchief, cannot be said to amount to a submission to arrest.

The judgment appealed from is reversed.

All the Judges concur.